IN THE MATTER OF THE ESTATE OF JOHN W. GERKE, DECEASED.

*Administrator's claim against his intestate's estate—Evidence.*

Under sections 6100—1 R. S., prescribing the mode of procedure on the presentation of an administrator's claim against his intestate's estate, no pleadings are necessary.

The same rules of evidence apply in such cases as in other proceedings at law.

*Decided December 3, 1889.*

The facts are stated in the opinion.

*Paxton & Warrington,* for George Gerke.

*Kramer & Kramer, contra.*

GOEBEL, J.

This is an application for the allowance of a claim of $10,000, in favor of George Gerke against the estate of John W. Gerke, deceased, of which estate George is one of the administrators. From the exhibits and proof the following facts appear :

John W. Gerke was a brother of George Gerke and Mrs. Robert Kuerze ; they were the only children of the late John Gerke, who left them a large estate. This estate was managed by George and kept intact during the lifetime of his brother John.

They were equally interested in the Gerke Brewing Company, of which concern George was the president, and in the management of which John and the husband of Mrs. Kuerze were also active. George was engaged in other and private speculations. He and John, together with others, were

engaged in the management of a base ball club. In this enterprise they were not successful, so that at the end of the season it was ascertained that John was indebted to George in the sum of ten thousand dollars.

Some time in the summer of 1883, one Oberhelman loaned George $8,000, for which he gave his notes. This sum George claims he gave to John; namely, $5,000 at one time and $3,000 at another time. He does not remember the date, but it was within sixty days of the time he received it from Oberhelman. Neither does he remember whether he gave it to him by check or in cash. He took no note or any evidence of indebtedness from John, and he has not now any memoranda, return checks or stubs, showing this transaction.

Oberhelman, subsequently and with the understanding of George and the Gerke Brewing Company, during the absence of George in Europe, drew the greater part of this money from the Gerke Brewing Company, and the amount so drawn by him was charged to the account of George.

This was in the lifetime of John and while he was actively engaged in the concern. John became broken in health, and in August, 1887, departed for Colorado. In November, 1887, John's health had not improved; and George, fearing that John might

In the matter of the Estate of John W. Gerke, Deceased.

die, wrote to him to send some evidence of this indebtedness.

This letter is not produced, and could not be found among his papers nor among the letters written by George to John.    All of the letters and papers came into the possession of Robert Kuerze.    If such letter was written, the failure to produce the same should not militate against George ; no copy was kept by him.

John, at this time, was still indebted to George in the sum of $10,000, on the base ball claim.    The principal and interest on the Oberhelman loan amounted at this time, to $10,100.

On the 17th day of November, 1887, George received a letter from John, dated Colorado Springs, Col., November 13, 1887, enclosing a note for $10,-000, dated November 15, 1887, payable in one day after date to the order of George.    This letter makes no mention of this note nor of any business transaction, but refers to his health and contains a request to send him $200.

In the first week of December, 1887, George visited John at Colorado Springs and returned to Cincinnati December 10th, 1887.    John now failing in health very rapidly, Mrs. Kuerze, on George's return, went to Colorado Springs to take care of him.    He lingered until January 3, 1888, when he died.    John was not married, and so far as the record shows died

intestate. George and Mrs. Kuerze therefore inherited in equal shares, John's estate.

At this time George was indebted to the Metropolitan Bank to the amount of about $92,000. The bank having failed, George was pressed for payment. John was insured in the sum of $20,000. On the 14th day of February, 1888, this sum was paid to the administrators and thereupon they paid to George the amount due him from John on the base ball claim, and divided the balance between George and Mrs. Kuerze. On the next day the real estate of John was divided, also the brewery and other stocks that were not hypothecated. The estate of John was then practically divided.

More than eighteen months after the death of John, George presented this note for allowance. On the hearing of this cause the execution of the note by John was not denied. It is claimed on behalf of Mrs. Kuerze that the note was given to represent John's share of the base ball indebtedness, and that this note was satisfied out of the proceeds of the life insurance policies.

As this case must be determined upon the evidence, we have endeavored in the foregoing statements, to give the facts which are not contradicted. Other evidence was offered and of it we shall speak hereafter.

In proceedings of this kind, under section 6100

In the matter of the Estate of John W. Gerke, Deceased.

R. S., pleadings are not necessary.   All the parties mentioned in the order  therein provided, are  parties to the  proceedings, and  any other person having  an interest in  the  cause, may  come  in and  be made  a party thereto ;  and under section 6101 R. S., exception  may be taken to any decision of the court upon any  matter  of law,  by  any  person  who may  be affected  thereby, and  proceedings  in  error may be prosecuted.   After  a final  order or  judgment as in other cases, an appeal  may also be taken to the court of  Common  Pleas  from the order  allowing or disallowing such claim.

We think this kind of legislation gives to the application, notwithstanding  the  absence  of  pleadings, the  character of  a  case at  law, and  hence  the rules of evidence applicable to any other  proceeding at law should be applied here.

In substance  the  parties  resisting this  application plead  payment;  the  burden  of  proof,  therefore,  is upon  them.   Let  us  see whether  they have  made out their case.   George says he borrowed the money he gave to John from Oberhelman.  That he borrowed $8,000, from Oberhelman is not  denied, but George does not remember  when he  gave  it  to  John ;  he thinks it was within sixty days after he had received it from Oberhelman.   He  took no note  or any evidence  of  indebtedness  from  John  for  this  large amount  of  money.   He  first  stated  that  he  gave

John two checks for $5,000, and $3,000, in the middle of the summer of 1883, but he does not remember on what bank he drew these checks.

The proof is, that he kept his private account in the Metropolitan Bank. The books of this bank do not disclose that such checks were drawn. On being recalled, he stated that he gave John the $8,000, in cash. If he paid John the $8,000, in cash sixty days after he had received it from Oberhelman, the books of the bank not disclosing a withdrawal of that amount, then he had that sum in his possession during this time.

In view of his business habits, this is not probable. The greater portion of the money borrowed from Oberhelman with the interest thereon, was subsequently paid back by the brewing company and charged to George's account. John at this very time owned one-third of the stock of that concern, and had an account with the concern. Why should George have this sum and interest charged to his account?

More than four years elapsed before he asked John for a note, yet during this time George became involved through private speculations, so that at the time of the failure of the Metropolitan Bank, on February 6, 1888, he owed that bank $92,000. Being pressed for payment, taking all available assets he had, hypothecating stocks, etc., he never made

use of that note.   John was able to pay it in his life-time and likewise his estate after his death.

Mr. Paxton, his counsel, says the Metropolitan Bank had failed and George's notes were in that bank un-paid, representing what John owed him on the base ball claim.   It seems that George had obligated him-self to the bank, in addition to other matters, to the extent of John's indebtedness to him, and long before John gave George the note of November 15.  George held this note three months before the failure of the bank, and after and during all the time he was pressed by the receiver of the bank.   Why did he not make use of that note?

We would say that if George considered this note an indebtedness separate and apart from the base ball claim, he would have made use of it in the same manner as he had done with the base ball claim.   $20,000, had been received from the insur-company.   Pressed as he was for money, why did he simply insist on the payment of the base ball claim? Nay, more, he not even mentioned that he held a note or another claim, until eighteen months after John's death, in the meantime permitting distribu-tion to be made of nearly all of John's estate between his sister and himself.

Whether George received this note by mail or not is immaterial.   It is strange, however, that the letter in which the note was enclosed, makes no men-

tion of the matter.   If George wrote to John to send him a note for the Oberhelman loan, and he owed him, in addition, $10,000, on the base ball claim, is it not likely that he should want some evidence of that? Especially since George had made himself liable to the bank for this base ball claim.

George says that he kept an account of the base ball matters, and therefore he did not want a note. If George wants to be understood as having paid to John the $8,000, in checks, then he had at the time he received the note, as much evidence of this indebtedness as of the base ball matter, namely, the return checks and stubs.   The base ball account was kept by him and was a private matter between himself and John, and was subject to dispute; why should George leave this matter open?

George says the reason he did not mention his claim was that he gave Mr. Paxton, his attorney, the matter in charge, and he presumed Mr. Paxton was attending to it.   Mr. Paxton says he received the base ball claim and note about the time of the failure of the Metropolitan Bank ; this was in February, 1888.   We do not see how this prevented George from saying to his sister, that since November, 1887, he held a note against John for money loaned him, and especially so, when at the time of the division of the insurance money, George then had his base ball claim paid.

Mr. Kramer and Mr. Kuerze asked him whether he knew of any other claims against John's estate. At this time George was upon friendly terms with his sister.

Upon a careful consideration of the evidence and circumstances surrounding the case, and inferences that may be fairly drawn from the evidence, our conclusion is that this note was not given for the Oberhelman loan ; that it was given to cover the base ball claim, and was so understood by George. His conduct in relation thereto, leads us to believe that the claim he now makes, in reference to the note, is an after thought encouraged by his feeling of animosity towards his sister. The base ball claim having been settled, this note is of no validity and his claim will be rejected.